**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2970-WJM-BNB

DELBERT E. MAXFIELD,

      Plaintiff,

v.

DAVE BRESSLER, individually and in his official capacity as Director of Weld County
Paramedic Services, and
THE BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY, COLORADO, a
municipal corporation,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION TO DISMISS**

---

Plaintiff Delbert E. Maxfield ("Plaintiff") has brought this civil action under 42

U.S.C. § 1983 against Defendants Dave Bressler and the Board of County

Commissioners of Weld County, Colorado ("Board of Commissioners") (collectively

"Defendants"), alleging violations of the First Amendment and wrongful discharge in

violation of public policy.  (Am. Compl. (ECF No. 22.))  This matter is before the Court

on Defendants' Renewed Motion to Dismiss the Amended Complaint ("Motion").  (ECF

No. 30.)  For the reasons set forth below, Defendants' Motion is granted as to the Board

of Commissioners and denied as to Bressler.

## I.  BACKGROUND

The relevant facts, as pleaded in the Amended Complaint, are as follows.  This

case arises out of a meeting Plaintiff held with Weld County Commissioner William

Garcia on August 26, 2011.  (Am. Compl. ¶ 5.)  At the time, Plaintiff was employed as a Program Coordinator for the Weld County Paramedic Services ("WCPS"), Defendant Dave Bressler was the Director of WCPS, and Commissioner Garcia was a member of the Board of Commissioners designated as the coordinator of WCPS with direct supervisory authority.  (*Id.* ¶¶ 2, 6-10.)  At the meeting, Plaintiff and Commissioner Garcia discussed numerous issues pertaining to WCPS operations, including the expenditure of WCPS funds outside the areas of Plaintiff's job duties.  (*Id.* ¶¶ 7, 9-12.)

On August 30, 2011, Commissioner Garcia met with Defendant Bressler and informed him of the WCPS operational issues that Plaintiff had raised.  (*Id.* ¶ 15.)  On September 2, 2011, Bressler met with Plaintiff and asked him for information about Plaintiff's meeting with Commissioner Garcia.  (*Id.* ¶ 17-19.)  Bressler attempted to attribute false statements to Plaintiff, and pressured Plaintiff to admit that he had made the statements in his meeting with Commissioner Garcia.  (*Id.*)  Bressler was visibly angry, and made repeated attempts to elicit information about Plaintiff's meeting with Commissioner Garcia.  (*Id.* ¶¶ 18-20.)  However, Plaintiff refused to disclose what had been discussed, stating that it was a private meeting with his elected official.  (*Id.* ¶¶ 19, 21.)  As a result, Bressler placed Plaintiff on a paid leave of absence and informed Plaintiff that he would be sent to a pre-dismissal hearing.  (*Id.* ¶ 20-21.)

On September 6, 2011, Plaintiff received a letter from Bressler which stated the reasons for his possible dismissal and informed him of his right to rebut those reasons at his pre-dismissal hearing.  (*Id.* ¶¶ 22-23; ECF No. 22-1.)  The reasons listed in the pre-dismissal letter included Plaintiff's failure to meet performance standards because

the meeting with Commissioner Garcia did not follow the chain of command, dishonesty

due to false information conveyed to Commissioner Garcia, insubordination, and

engaging in conduct likely to have an adverse effect upon Weld County government.

(ECF No. 22-1.)  Plaintiff alleges that these were false accusations made by Bressler to

cause Plaintiff distress and hardship.  (Am. Compl. ¶ 24.)

At the pre-dismissal hearing on September 7, 2011, Plaintiff again refused to

disclose the contents of his meeting with Commissioner Garcia, stating that it was a

private meeting with his elected official.  (*Id.* ¶ 25.)  Commissioner Garcia appeared at

the hearing as a witness.  (*Id.* ¶¶ 40, 52.)  At the conclusion of the hearing, Plaintiff was

terminated from employment with WCPS.  (*Id.* ¶ 26.)

On November 13, 2012, Plaintiff filed this action against Bressler and Weld

County, alleging that they had discharged him in retaliation for exercising his First

Amendment rights and refusing to disclose the specifics of his speech, that Defendants

were motivated by Plaintiff's protected speech in discharging him, and that Defendants

therefore violated the Free Speech and Right to Petition clauses of the First

Amendment.  (ECF No. 1 at ¶¶ 23-40.)  The Complaint also alleged that Defendants

violated Colorado state law by wrongfully discharging him in violation of public policy.

(*Id.* ¶¶ 41-49.)

On June 12, 2013, the Court granted Defendants' Motion to Dismiss the

Complaint based upon Plaintiff's failure to sufficiently allege his First Amendment

claims, and declined supplemental jurisdiction over Plaintiff's state claim.  (ECF No. 21.)

With leave of Court, Plaintiff filed an Amended Complaint on July 5, 2013,

supplementing his allegations and replacing former Defendant Weld County with a new

3

Defendant, the Board of Commissioners.  (Am. Compl. ¶ 3.)

On July 25, 2013, Defendants filed the instant Renewed Motion to Dismiss. (ECF No. 30.)  Plaintiff filed a Response (ECF No. 33), and Defendants a Reply (ECF No. 35).  On the same day that the instant Motion was filed, Defendants filed an unopposed motion to stay the case pending resolution of the Motion.  (ECF No. 31.) The Court granted the stay on August 19, 2013.  (ECF No. 19.)

## II.  LEGAL STANDARD[1]

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).  The "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).  This requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, [but also to] provide fair notice to defendants of the actual grounds of the claim against them."  *Id.*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

---

[1] Although Defendants' Motion is filed pursuant to both Rules 12(b)(1) and 12(b)(6), the Court addresses herein only Rule 12(b)(6) because it is dispositive of the Motion.

alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

## III.  ANALYSIS

Defendants raise several arguments that the Amended Complaint should be dismissed, as follows: (1) although Plaintiff states a claim for a First Amendment violation,[2] Defendant Bressler is entitled to qualified immunity because that violation was not clearly established; (2) the Board of Commissioners should be dismissed because Plaintiff fails to allege facts establishing municipal liability; (3) Plaintiff's wrongful discharge claim against Defendant Bressler[3] is barred by the Colorado Governmental Immunity Act ("CGIA"); and (4) Plaintiff fails to allege the requisite facts to state a claim for wrongful discharge in violation of public policy.  (ECF No. 30 at 14-23.)  The Court will discuss each argument in turn.

### A.    First Amendment Claims

Plaintiff brings claims for violations of both the free speech clause and the right to petition clause of the First Amendment, arguing that he was terminated from his employment at WCPS in retaliation for conduct protected under the First Amendment.

---

[2] Defendants' Motion initially argued, as in their original Motion to Dismiss, that Plaintiff still failed to allege sufficient facts to state claims under the First Amendment.  (ECF No. 30 at 7-14.)  However, after reviewing Plaintiff's Response, Defendants conceded in their Reply that Plaintiff's Amended Complaint no longer fails to state a claim for First Amendment violations. (ECF No. 35 at 1-2.)  Accordingly, the Court accepts Defendants' concession and will discuss only Defendants' remaining arguments.

[3] As Defendants indicate in their Motion, Plaintiff has agreed to dismiss the Board of Commissioners from his wrongful discharge claim.  (*See* ECF No. 30 at 1-2, Ex. 1.)  Thus, Plaintiff's state claim is brought only against Defendant Bressler.

(Am. Compl. ¶¶ 34-57.)  A claim for retaliatory discharge by a public employee under

the First Amendment is evaluated under the five factors of the *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an employee's official
> duties; (2) whether the speech was on a matter of public concern; (3)
> whether the government's interests, as employer, in promoting the
> efficiency of the public service are sufficient to outweigh the plaintiff's free
> speech interests; (4) whether the protected speech was a motivating
> factor in the adverse employment action; and (5) whether the defendant
> would have reached the same employment decision in the absence of the
> protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (citing *Garcetti v. Ceballos,*

547 U.S. 410 (2006); *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968)).  Courts

evaluating retaliatory discharge cases apply the same test for claims under both the

right to speech and the right to petition clauses of the First Amendment.  *Borough of*

*Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494-95 (2011) (quoting *Thomas v. Collins*, 323

U.S. 516, 530 (1945)).

    1.   <u>Defendant Bressler</u>

In the Motion, Defendants argue that Plaintiff's claims against Defendant

Bressler should be dismissed because he is entitled to qualified immunity.  (ECF No. 35

at 2-4.)

"The doctrine of qualified immunity protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Pearson v.*

*Callahan*, 555 U.S. 223 (2009) (quotation omitted).  To resolve qualified immunity

claims, a court must consider two elements: (1) whether a constitutional violation

occurred, and (2) whether the violated right was "clearly established" at the time of the

violation. *Id.* at 230-31. "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Defendants do not contest that Plaintiff has sufficiently alleged a constitutional violation. However, they assert that Bressler is entitled to qualified immunity from suit because the violated right was not clearly established law.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). However, Plaintiff need not show that the precise issue in question was previously decided in his favor. Rather, the Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). This holding "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted). Thus, the question before the Court is whether the state of the law was such that Bressler should have been on fair notice that his conduct, as Plaintiff has alleged it, violated the First Amendment.

Defendants do not dispute that it was clearly established that Plaintiff's alleged conduct was protected by the First Amendment, satisfying the first two prongs of the

7

*Garcetti/Pickering* test.  Instead, Defendants appear to focus their argument on the third prong of the test.  Defendants contend that the pre-termination letter appended to the Amended Complaint establishes Bressler's belief that Plaintiff made false statements to Commissioner Garcia, that those statements and the meeting itself were disruptive to government functioning, and that Plaintiff's failure to follow the chain of command to bring his concerns to his immediate supervisor was insubordinate and fell short of performance standards.  (ECF No. 35 at 3.)  Given the facts in Bressler's knowledge as laid out in the pre-termination letter, Defendants argue that it was reasonable for Bressler to believe that the government's interest in protecting itself from false statements, disruption, and insubordination outweighed Plaintiff's First Amendment interest in being permitted to make unapproved false statements.  (*Id.*)  Accordingly, from Bressler's perspective, the balancing test was in the government's favor, and thus there was no reason for him to know that Plaintiff's termination violated the First Amendment.  *See Dixon*, 553 F.3d at 1302.

In so arguing, however, Defendants ignore the Court's obligation to accept as true all plausible facts pleaded by Plaintiff.  *Shero*, 510 F.3d at 1200.  In the Amended Complaint, Plaintiff contends that Bressler's reasons for his termination articulated in the pre-dismissal letter were not his true beliefs about Plaintiff's actions, but in fact were "trumped-up" and "false charges" brought for the malicious purpose of causing Plaintiff emotional distress and hardship in finding replacement employment.  (Am. Compl. ¶ 24.)  Plaintiff also states that Bressler "attempted to attribute false statements" to him, that he "pressured" Plaintiff to admit that the false statements were made, and that he grew angry when Plaintiff refused.  (*Id.* ¶¶ 17-20.)  From Plaintiff's factual allegations, it

8

is reasonable to infer that Plaintiff believed the statements he made to Commissioner

Garcia were not false, and that Bressler simply invented the reasons given for his

termination in the pre-dismissal letter because he was angry that Plaintiff raised

sensitive issues with Commissioner Garcia.

If, as Plaintiff alleges, Bressler fabricated accusations of false statements and

disruption in order to penalize Plaintiff for speaking with Commissioner Garcia and

disclosing unfavorable information about WCPS, Bressler should have known that

terminating Plaintiff based upon those accusations was unlawful.  The Tenth Circuit has

made clear with respect to the third prong of the test that "unless the government

employer can show that the termination was based on legitimate reasons grounded in

the efficient conduct of public business, there is no need to proceed to balancing, and

the First Amendment interest of the plaintiff prevails."  *Dixon*, 553 F.3d at 1304 (citing

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007);

*Gardetto v. Mason*, 100 F.3d 803, 815 (10th Cir. 1996)).  Fabricated grounds for

termination cannot be "legitimate reasons".  Thus, given the facts as pleaded in the

Amended Complaint, it was clearly established that terminating Plaintiff under these

conditions would violate the First Amendment.  Accordingly, Bressler is not entitled to

qualified immunity.

      2.    <u>Defendant Board of Commissioners</u>

Defendants next argue that Plaintiff has failed to state a claim against the Board

of Commissioners because he has not alleged facts from which municipal liability can

be established.  (ECF No. 30 at 15-19.)  Because the Board of Commissioners is a

political subdivision, Defendants argue that Plaintiff must demonstrate that his injury

was caused by some action by the Board as a whole in order to hold it liable, and that he has failed to do so.  (*Id.* at 17-19.)

Where municipal liability for a constitutional violation is at issue, the plaintiff must demonstrate that some official policy is responsible for the violation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Even where that policy is not embodied in an official enactment, it may be reflected in "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Id.* at 691.  The Tenth Circuit has set forth a three-part test for determining when a governmental entity is liable for an unofficial custom, which requires a plaintiff to prove: (1) a "continuing, persistent and widespread practice of unconstitutional misconduct"; (2) "[d]eliberate indifference or tacit approval" of such misconduct; and (3) "[t]hat the plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom and that the custom was the moving force behind the unconstitutional acts."  *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

Here, Plaintiff has not alleged that any official enactment by the Board of Commissioners violated his First Amendment rights.  Instead, he alleges that Commissioner Garcia's involvement and complicity in Plaintiff's termination, in conjunction with Garcia's status as an attorney and his position as the Commissioner in charge of oversight of WCPS, "evince[s] that his actions constitute a custom of Weld [County] and necessitate[s] that his actions be attributed to the Commissioners as a whole and thus Weld as a body politic."  (Am. Compl. ¶¶ 41, 53.)  Plaintiff alleges no other basis for holding the Board of Commissioners liable for the constitutional violation.

Plaintiff's allegations fall far short of establishing an unofficial custom.  Even taking as true Plaintiff's conclusory allegation that the Board of Commissioners' failure to contest Plaintiff's termination constitutes tacit approval of the constitutional violation, Plaintiff has not alleged any facts showing that that violation resulted from a "continuing, persistent and widespread practice" that could be considered a custom.  (*See* Am. Compl. ¶¶ 41, 53.)  In his Response to the Motion, Plaintiff argues that Defendants "do not consider the possibility that the collective Board of County Commissioners were involved."  (ECF No. 33 at 16.)  However, Plaintiff has made no factual allegations that support such a possibility,[4] nor does a mere "possibility" suffice to establish a plausible factual allegation that the Court may take as true when considering a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

Furthermore, even if Plaintiff successfully alleged an unofficial custom of disregarding First Amendment rights, the Amended Complaint contains no facts to suggest that the Board of Commissioners' alleged custom was the "moving force" behind the constitutional violation.  *See Gates*, 996 F.2d at 1041.  Instead, as Plaintiff alleges, Plaintiff's termination was caused by Bressler willfully and maliciously inventing false charges against Plaintiff in retaliation for Plaintiff's protected conduct.  (*See* Am.

---

[4] Plaintiff further states that he has had no opportunity to conduct discovery in order to establish unlawful customs of the Board of Commissioners, and that if the Court is inclined to dismiss his claims against the Board, Plaintiff should be entitled to discovery to demonstrate the Board's liability.  (ECF No. 33 at 16-17.)  In addition to the fact that Plaintiff's belated request for discovery is contained within his Response (in violation of the Local Rules and this Court's Practice Standards, *see* D.C.COLO.LCivR. 7.1(c), and WJM Revised Practice Standard III.B), Plaintiff's requested discovery appears to be a fishing expedition for evidence to support factual allegations he has not even made.  Accordingly, the Court declines to consider this request.

Compl. ¶¶ 17-26.)  At best, the Amended Complaint alleges that Commissioner Garcia supported Bressler's unconstitutional decision, and that the Board of Commissioners validated the constitutional violation after the fact.  These allegations are insufficient to support municipal liability.  *See Monell*, 436 U.S. at 690; *Gates*, 996 F.2d at 1041.

Accordingly, the Court finds that Plaintiff has failed to state a First Amendment claim against the Board of Commissioners.  As Plaintiff's First Amendment claims are the only claims brought against that Defendant, the Motion is granted with respect to the Board of Commissioners.

**B.     Wrongful Discharge Claim**

With respect to Plaintiff's state claim against Defendant Bressler for wrongful discharge in violation of public policy, Defendants first argue that the claim is barred by the CGIA, and second that Plaintiff fails to allege the requisite elements of the claim. (ECF No. 30 at 20-23.)

1.     CGIA

The CGIA codifies governmental immunity from suit in tort cases brought against Colorado public entities and public employees.  Colo. Rev. Stat. §§ 24-10-101 *et seq.* Because Bressler was employed by WCPS, a public entity, when the events at issue occurred, Plaintiff's state law claim is subject to the CGIA.  (*See* Am. Compl. ¶ 2.)

"A public employee is immune from liability on tort claims arising out of an act or omission of the employee during the performance of his or her duties and within the scope of his or her employment, unless the act or omission causing such injury was willful and wanton."  *Carothers v. Archuleta Cty. Sheriff*, 159 P.2d 647, 650 (Colo. App.

2006) (citing Colo. Rev. Stat. § 24-10-118).  Colorado courts have adopted the definition of "willful and wanton conduct" from Colorado's exemplary damages statute, which defines it as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b); *see Drake v. City & Cnty. of Denver*, 953 F. Supp. 1150, 1160 (D. Colo. 1997); *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (citing *Pettingell v. Moede*, 271 P.2d 1038, 1042 (Colo. 1954)).

As with Defendants' qualified immunity argument, Defendants again argue that the decision to terminate Plaintiff was reasonable based on Bressler's belief that Plaintiff made false statements and was disruptive to WCPS operations.  (ECF No. 30 at 21-22; ECF No. 35 at 6-7.)  However, as discussed above, Plaintiff's Amended Complaint alleges that Bressler fabricated those reasons for terminating Plaintiff, and did so maliciously and in an attempt to penalize Plaintiff for exercising his free speech and petition rights.  The Court finds that these allegations are sufficient to establish a claim that Bressler's conduct was purposefully and recklessly committed to cause Plaintiff injury, and in disregard of Plaintiff's constitutional rights.  Because Bressler's alleged actions constitute willful and wanton conduct under Colorado law, Plaintiff's wrongful discharge claim against Defendant Bressler is not barred by the CGIA.

2.     Wrongful Discharge Claim

Finally, Defendants argue that Plaintiff has failed to allege the requisite elements of a claim for wrongful discharge in violation of public policy.  (ECF No. 30 at 22-23.)

13

Absent an express contract providing otherwise, Colorado law presumes that an employment relationship is terminable at will by either party. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987). A common law exception to this presumption establishes that an employer may not terminate an employee in violation of public policy. *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540 (Colo. 1997). In order to state a claim for wrongful termination in violation of public policy, a plaintiff must show the following:

> [1] the employer directed the employee to perform an illegal act or prohibited the employee from performing a public duty or exercising an important job-related right or privilege;
> [2] the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's rights or privileges as a worker;
> [3] the employee was terminated as a result of refusing to perform the act directed by the employer; and
> [4] the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the order was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal rights or privileges as a worker.

*Jaynes v. Centura Health Corp*., 148 P.3d 241, 243 (Colo. App. 2006) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992)).

Here, Defendants argue that Plaintiff has failed to allege facts satisfying these factors. (ECF No. 30 at 22-23.) However, while the specific language of the Colorado cases setting forth these elements may not apply precisely to Plaintiff's case, the Court finds that Plaintiff's allegations satisfy the elements of a claim for wrongful discharge in violation of public policy. First, although Plaintiff did not refuse to perform an illegal act,

14

the Amended Complaint alleges that he was prohibited, through retaliatory termination from his employment, from exercising his free speech and petition rights in attempting to bring concerns regarding the expenditure of public funds to an elected official.  This sufficiently demonstrates that his employer prohibited him from performing a public duty.  Second, as Defendants concede, Bressler's actions in prohibiting Plaintiff's speech as pleaded in the Amended Complaint violate the individual rights established in the First Amendment, which undermines "a clearly expressed public policy relating to [his] basic responsibility as a citizen." *Jaynes*, 148 P.3d at 243.  Third, it is undisputed that Plaintiff was terminated as a result of his conduct.  Fourth, as discussed above with respect to qualified immunity, the Court finds that Bressler reasonably should have been aware that terminating Plaintiff because of his attempt to petition Commissioner Garcia and exercise his First Amendment rights was a violation of Plaintiff's legal rights.

Therefore, the Court finds that Plaintiff has successfully stated a claim for wrongful discharge in violation of public policy against Defendant Bressler.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion is GRANTED with respect to the Board of Commissioners, and all claims against the Board are DISMISSED with prejudice;

2. Defendant Board of Commissioners is hereby TERMINATED as a party to this action;

3. Defendants' Motion is DENIED with respect to Defendant Bressler; and

4. The stay of discovery and pretrial disclosures is hereby LIFTED, and Plaintiff shall file a status report on or before November 28, 2013 in accordance with the

August 19, 2013 Order of Magistrate Judge Boyd N. Boland (ECF No. 34).

Dated this 18th day of November, 2013.

BY THE COURT:

William J. Martinez
United States District Judge