**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2970-WJM-NYW

DELBERT E. MAXFIELD,

      Plaintiff,

v.

DAVE BRESSLER,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Delbert E. Maxfield ("Plaintiff") has brought this civil action under 42 U.S.C. § 1983 against Defendant Dave Bressler ("Defendant"), alleging that Plaintiff was wrongfully discharged in violation of public policy and the First Amendment. (Am. Compl. (ECF No. 22.))  This matter is before the Court on Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 54.)  For the reasons set forth below, Defendant's Motion is granted.

## I.  BACKGROUND

The relevant facts are as follows, and are undisputed unless otherwise noted. This case arises out of a meeting Plaintiff held with Weld County Commissioner William Garcia ("Commissioner Garcia") on August 26, 2011.  (Movant's Statement of Material Facts ("MSMF") (ECF No. 54 at 2–57) ¶ 10; ECF No. 22 ¶ 5.)  At the time, Plaintiff was employed as the Program Coordinator for the Weld County Paramedic Services ("WCPS"), Defendant was the Director of WCPS, and Commissioner Garcia was a

member of the Board of Commissioners designated as the coordinator of WCPS with direct supervisory authority over WCPS.  (MSMF ¶¶ 1, 2, 4, 8.)  In addition to his position with WCPS, Plaintiff was also the President of the Board of Directors for the Windsor-Severance Fire Protection District ("Fire District").  (Deposition of Del Maxfield ("Pl.'s Dep.") (ECF No. 57-1) pp. 14–15.)  The Fire District used WCPS services at the time.  (*Id.* pp. 82–83.)

At the August 26, 2011 meeting, Plaintiff and Commissioner Garcia discussed numerous issues pertaining to WCPS operations, including the expenditure of WCPS funds, the future of the paramedic station in Windsor, the City of Greeley's request for a separate paramedic service, and how information was shared top-down from the Weld County Commissioners.  (MSMF ¶ 14.)  The parties dispute precisely what information was shared at this meeting.  Defendant contends that Plaintiff informed Commissioner Garcia that WCPS had spent approximately $14,000 on honor guard uniforms, that WCPS was incurring approximately $15,000 per month in lost mileage from ambulances at $0.96 per mile, and that WCPS had incurred approximately $15,000 in spending on the Tactical Emergency Medical Support ("TEMS") team.  (MSMF ¶¶ 16, 19, 22.)  Plaintiff argues that he did not provide a specific figure for the honor guard uniforms, but that $14,000 was a number "being thrown around the office," and stated that any number he provided regarding lost mileage was purely "hypothetical."  (Pl.'s Dep. pp. 81–82, 92–97.)  However, both parties agree that these numbers were inaccurate, that the actual amounts spent by WCPS were approximately $6,200 on honor guard uniforms and $1,600 to $2,000 per month on the TEMS team, and the ambulances were not even driven 15,000 total miles per month (let alone 15,000 waste

2

miles) and had a cost of $0.59–$0.61 per mile.  (MSMF ¶¶ 18, 21, 24.)

Plaintiff told Commissioner Garcia that he had previously raised these concerns within the chain of command, but they had fallen on deaf ears.  (*Id.* ¶ 25.)  Plaintiff asserts that he had previously mentioned the opportunity for cost savings regarding ambulance waste miles at a management meeting.  (Pl.'s Dep. pp. 93–95.)  However, Plaintiff does not dispute that he never previously raised the issues of the cost of honor guard uniforms or the TEMS team with any supervisors.  (*See* ECF No. 57 at 3 ¶ 26.)

On August 30, 2011, Commissioner Garcia met with Defendant in a regularly scheduled weekly meeting and informed him of the WCPS operational issues that Plaintiff had raised.  (*Id.* ¶ 27.)  Defendant indicated that he believed the figures Plaintiff had provided regarding expenditures were inaccurate, and Commissioner Garcia directed Defendant to provide Plaintiff with accurate information and discuss possible savings with him.  (*Id.* ¶ 29.)  On September 2, 2011, Defendant met with Plaintiff and asked him for information about Plaintiff's meeting with Commissioner Garcia, stating what Commissioner Garcia had said and asking Plaintiff to confirm whether he gave that information to Commissioner Garcia.  (*Id.* ¶ 32.)  Plaintiff refused to disclose what had been discussed, stating that it was a private meeting with his elected official.  (*Id.* ¶ 33.)  After several attempts to get Plaintiff to respond to these questions, Defendant placed Plaintiff on a paid leave of absence and informed Plaintiff that he would be sent to a pre-dismissal hearing.  (*Id.* ¶ 34.)  According to Defendant, termination procedures would not have been initiated if Plaintiff had substantively responded to Defendant's questions; Plaintiff disputes this.  (*Id.* ¶ 36; ECF No. 57 at 3 ¶ 36.)  Defendant

subsequently conducted an independent investigation of the concerns raised in Plaintiff's meeting with Commissioner Garcia.  (MSMF ¶ 37.)

On September 6, 2011, Plaintiff received a letter from Bressler which stated the reasons for his possible dismissal and informed him of his right to rebut those reasons at his pre-dismissal hearing (the "Pre-Dismissal Letter") (ECF No. 22-1).  (MSMF ¶ 39.) The reasons listed in the Pre-Dismissal Letter included Plaintiff's failure to meet performance standards because the meeting with Commissioner Garcia did not follow the chain of command, dishonesty due to false information conveyed to Commissioner Garcia, insubordination, and engaging in conduct likely to have an adverse effect upon Weld County government.  (ECF No. 22-1.)

At the pre-dismissal hearing on September 7, 2011, Plaintiff again refused to disclose the contents of his meeting with Commissioner Garcia, stating that it was a private meeting with his elected official.  (MSMF ¶ 45.)  At the conclusion of the hearing, Plaintiff was terminated from employment with WCPS.  (ECF No. 54-9.)

In accordance with the Weld County Code, Plaintiff appealed his termination to a Grievance Board, which upheld Plaintiff's termination after a hearing involving witness testimony.  (MSMF ¶¶ 47–50.)  Plaintiff's claim for unemployment benefits was initially approved, but was reversed following a hearing on Weld County's appeal.  (*Id.* ¶¶ 52–54.)  Plaintiff appealed again to the Industrial Claim Appeals Office, which affirmed the denial of benefits following a hearing.  (*Id.* ¶¶ 55–57.)

On November 13, 2012, Plaintiff filed this action against Defendant and Weld County, alleging that they had discharged him in retaliation for exercising his First Amendment rights and refusing to disclose the specifics of his speech, that they were

motivated by Plaintiff's protected speech in discharging him, and that they therefore violated the Free Speech and Right to Petition clauses of the First Amendment.  (ECF No. 1 ¶¶ 23–40.)  The Complaint also alleged that Defendants violated Colorado state law by wrongfully discharging him in violation of public policy.  (*Id.* ¶¶ 41–49.)

On June 12, 2013, the Court granted Defendants' Motion to Dismiss the Complaint based upon Plaintiff's failure to sufficiently allege his First Amendment claims, and declined supplemental jurisdiction over Plaintiff's state claim.  (ECF No. 21.) With leave of Court, Plaintiff filed an Amended Complaint on July 5, 2013, supplementing his allegations and replacing former Defendant Weld County with a new defendant, the Board of Commissioners.  (ECF No. 22 ¶ 3.)  On July 25, 2013, Defendants filed a Renewed Motion to Dismiss.  (ECF No. 30.)  The Court granted it in part and denied it in part, dismissing all claims against the Board of Commissioners. (ECF No. 37.)  On February 14, 2014, Defendant filed a Motion for Partial Summary Judgment as to all official capacity claims, which was granted on August 28, 2014. (ECF No. 56.)

On August 15, 2014, Defendant filed the instant Motion seeking summary judgment on all remaining claims.  (ECF No. 54.)  Plaintiff filed a Response (ECF No. 57), and Defendant a Reply (ECF No. 60).

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

Defendant argues that summary judgment is warranted as to both of Plaintiff's claims, contending that (1) Plaintiff fails to present evidence supporting his claim for a First Amendment violation; (2) even if Plaintiff has stated a claim for a First Amendment violation, Defendant is entitled to qualified immunity because that violation was not clearly established; (3) Plaintiff's wrongful discharge in violation of public policy claim is barred by the Colorado Governmental Immunity Act ("CGIA"); and (4) Plaintiff fails to present evidence supporting his claim for wrongful discharge.[1]  (ECF No. 54 at 16–32.) The Court will discuss each of Plaintiff's claims in turn.

---

[1]  The Motion also reiterates Defendant's prior Motion for Partial Summary Judgment as to Plaintiff's official capacity claim against the Board of County Commissioners.  (ECF No. 54 at 26–28.)  As the Court has already granted Defendant's Motion for Partial Summary Judgment as to that claim, this argument is moot.  (*See* ECF No. 56.)

## A.     First Amendment Claims

Plaintiff brings claims for violations of the free speech and right to petition

clauses of the First Amendment, arguing that he was terminated from his employment

at WCPS in retaliation for engaging in protected conduct.  (Am. Compl. ¶¶ 34–57.)  A

claim for retaliatory discharge of a public employee under the First Amendment is

evaluated under the five factors of the *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an
> employee's official duties; (2) whether the speech was on a
> matter of public concern; (3) whether the government's
> interests, as employer, in promoting the efficiency of the
> public service are sufficient to outweigh the plaintiff's free
> speech interests; (4) whether the protected speech was a
> motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same
> employment decision in the absence of the protected
> conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (citing *Garcetti v. Ceballos,*

547 U.S. 410 (2006); *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968)).  Courts

evaluating retaliatory discharge cases apply the same test for claims under both the

right to speech and the right to petition clauses of the First Amendment.  *Borough of

Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494–95 (2011) (citing *Thomas v. Collins*, 323

U.S. 516, 530 (1945)).

In the Motion, Defendant argues that he is entitled to qualified immunity.  (ECF

No. 54 at 24–26.)  "The doctrine of qualified immunity protects government officials

'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known.'"  *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  "When a defendant pleads qualified immunity, the plaintiff has

the heavy burden of establishing: (1) that the defendant's actions violated a federal

constitutional or statutory right; and (2) that the right violated was clearly established at

the time of the defendant's actions."  *Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000)

(internal quotation marks omitted).   "Qualified immunity is applicable unless the plaintiff

can satisfy both prongs of the inquiry."  *Herrera v. City of Albuquerque*, 589 F.3d 1064,

1070 (10th Cir. 2009).  As Defendant's first argument for summary judgment—a failure

to present evidence of a constitutional violation—is equivalent to the first prong of the

qualified immunity analysis, the Court will begin there.

1.     <u>Constitutional Violation</u>

Defendant concedes that Plaintiff has presented sufficient evidence to establish

that he was not speaking pursuant to his official duties under the first prong of the

*Garcetti/Pickering* test.  (ECF No. 54 at 17.)  However, Defendant argues that Plaintiff

has failed to present evidence satisfying the remainder of the elements of the test.  The

Court will discuss each element in turn.

a.     *Matter of Public Concern*

"'[S]peech which discloses any evidence of corruption, impropriety, or other

malfeasance on the part of city officials clearly concerns matters of public import.'"

*Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010) (quoting *Dill v. City of

Edmond,* 155 F.3d 1193, 1202 (10th Cir. 1998)); *see also Lancaster v. Indep. Sch. Dist.

No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998) (speech calculated to disclose wrongdoing

or inefficiency in the conduct of official duties is of public concern); *Conaway v. Smith,*

8

853 F.2d 789, 797 (10th Cir. 1988) ("Speech that seeks to expose improper operations of the government . . . clearly concerns vital public interests."). "Whether speech is a matter of public concern is a legal issue, to be determined by the district court as a matter of law . . . ." *Dixon*, 553 F.3d at 1304.

Here, it is undisputed that Plaintiff spoke with Commissioner Garcia about various operational issues relating to WCPS, including questioning the propriety of WCPS's expenditure of public funds and its internal and external communications. (MSMF ¶ 14.)  Thus, Defendant does not contest that Plaintiff's speech raises issues of inefficient spending and improper operations.  Instead, Defendant argues that Plaintiff's speech could not have been of public concern because Plaintiff made no effort to verify the data he relied on, and conveyed estimates and rumors "later demonstrated to be wildly inaccurate."  (ECF No. 54 at 18.)  Thus, Defendant contends that Plaintiff acted recklessly with regard to the truth or falsity of his statements, and therefore, under *Pickering*, Plaintiff's speech was not a matter of public concern.  (*Id.* (citing *Pickering*, 391 U.S. at 574).)

In *Pickering*, a teacher wrote a letter to a local newspaper criticizing the Board of Education for its handling of bond issues and allocation of resources.  391 U.S. at 565.  In a hearing on the teacher's subsequent termination, the Board of Education concluded that certain of the teacher's statements in the letter were false.  *Id.* at 567.  The Supreme Court agreed that the statements were false, *id.* at 570, but concluded that, "absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis

for his dismissal from public employment." *Id.* at 574.  Defendant seizes on this quotation to assert that Plaintiff's speech could not have been of public concern because it was recklessly false.  (ECF No. 54 at 18.)  However, Defendant ignores the footnote to the cited passage, wherein the Supreme Court noted that it had "no occasion to pass upon the additional question whether a statement that was knowingly or recklessly false would, if it were neither shown nor could reasonably be presumed to have had any harmful effects, still be protected by the First Amendment." *Pickering*, 391 U.S. at 574 n.6.  Defendant improperly assumes that *Pickering* establishes what the Supreme Court explicitly exempted from its holding.

Furthermore, *Pickering* demonstrates that the falsity of an employee's statements and their possible detriment to the government's interests is considered in the context of evaluating the third prong, which balances the employer's governmental interests with the employee's interests in free speech. *Id.* at 571.  As to the second prong, *Pickering* held that the teacher's criticism of school expenditures was a matter of "legitimate public concern" without any mention of the falsity of his statements on that matter. *See id.*  Accordingly, the Court finds that *Pickering* does not establish that false statements, even those recklessly so, should not be considered a matter of public concern.  Because Defendant cites no other authority in support of this argument, the Court rejects it.

As Plaintiff's speech here indisputably concerned criticism of public expenditures and operations, the Court finds that it constitutes a matter of public concern under the *Garcetti/Pickering* test.  Therefore, Plaintiff has put forth sufficient evidence to satisfy

10

the second prong of the test.

> b.    Balancing of Interests

The third prong of the *Garcetti/Pickering* test requires the Court to examine whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests.  *Dixon*, 553 F.3d at 1302.  "How exactly we are to 'weigh' and 'balance' the radically incommensurate interests at stake . . . is a matter of great debate and little certainty." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007). Furthermore, the third prong "actually places a substantial threshold burden on the employer before balancing is even considered: ' . . . unless the government employer can show that the termination was based on legitimate reasons grounded in the efficient conduct of political business, there is no need to proceed to balancing, and the First Amendment interest of the plaintiff prevails.'"  *Trant v. Oklahoma*, 426 F. App'x 653, 661 (10th Cir. 2011) (quoting *Dixon*, 553 F.3d at 1304).  In making this threshold showing, the Tenth Circuit has "cautioned that the employer cannot rely on purely speculative allegations that certain statements caused or will cause disruption."  *Dixon*, 553 F.3d at 1304 (internal quotation omitted).  Rather, the employer must cite either actual disruption or reasonable predictions thereof, supported by specific evidence. *Jantzen v. Hawkins*, 188 F.3d 1247, 1257 (10th Cir. 1999).

Defendant has presented specific evidence that he terminated Plaintiff because, in part, Plaintiff's meeting with Commissioner Garcia resulted in time and resources being diverted to investigate the misinformation Plaintiff had conveyed and had failed to

explain.  (*See* ECF No. 54-8 at 2.)  Defendant also argues that Plaintiff's failure to

follow the chain of command in raising his operational concerns impaired efforts to

maintain discipline by the WCPS management team and resulted in a lack of trust in

Plaintiff's judgment and actions, which would have caused future disruption if Plaintiff

had remained employed.  (*Id.*; ECF No. 54 at 19.)  The Court finds that this satisfies

Defendant's threshold burden to cite specific evidence of legitimate reasons grounded

in public efficiency.  *See Dixon*, 553 F.3d at 1304.

In response to Defendant's assertion of these interests, Plaintiff argues that the

disruption to WCPS caused by its supervisory Commissioner requesting verification of

public budgetary expenditures—the actual disruption that resulted from Plaintiff's

meeting—is minimal, and would be the same if any other citizen raised the same

issues.  (ECF No. 57 at 12.)  Defendant argues that Plaintiff's role as a WCPS

employee and Fire District board president lent credibility to the numbers Plaintiff cited

to Commissioner Garcia, leaving Commissioner Garcia to rely on them and ultimately

requiring WCPS to engage in a more thorough investigation than it would have done for

a private citizen's similar complaints.  (ECF No. 60 at 10.)  The Court agrees that,

because of the positions Plaintiff held, the disruption caused by Plaintiff's conduct is not

identical to the disruption that would be caused by an unaffiliated citizen's similar

critique.  However, the Court also notes that the actual disruption cited by Defendant is

limited; the diversion of resources to verify the information was a one-time burden, and

the diminished trust in Plaintiff's ability to perform would have affected WCPS's

relationship with Plaintiff alone.  There is no indication that the general operations of

WCPS were significantly affected.  Thus, Plaintiff's interest need not be overwhelming

to outweigh the government's interest.

On the other hand, Plaintiff's interest in communicating highly speculative, and ultimately false, information to Commissioner Garcia without following the chain of command[2] is not the type of "free and unhindered debate on matters of public importance" that is the "core value" of the First Amendment. *Pickering*, 391 U.S. at 573. Indeed, as discussed above, it is in this analysis that Defendant's argument regarding the falsity of the numbers Plaintiff provided to Commissioner Garcia becomes relevant. Defendant argues that its interest in avoiding the kinds of operational disruptions Plaintiff caused vastly outweighs Plaintiff's interest in communicating dubious rumors of outsized public expenditures. (ECF No. 54 at 19–20.)

Plaintiff does not dispute that some of the information he communicated to Commissioner Garcia was inaccurate, but asserts that those numbers "were merely hypothetical examples, and were not intended to convey actual, factual information." (ECF No. 57 at 7.) The evidence on this issue is inconsistent, even when confined to a review of Plaintiff's own statements. (*See* ECF No. 60 at 2.) In Plaintiff's response to the Motion, he does not admit that he provided specific numbers regarding waste miles to Commissioner Garcia, but evidence from his post-termination Grievance Hearing and unemployment hearing show that he previously admitted to doing so. (*See id.* (quoting ECF Nos. 60-1 at 2; 54-6 at 78; 54-7).) Thus, even viewing the evidence in the light

---

[2] Plaintiff disputes whether he failed to follow the chain of command with regard to the ambulance waste miles, arguing that he previously raised that issue at a management meeting (Pl.'s Dep. pp. 93–95), but does not dispute that he never discussed his other concerns with management before raising them with Commissioner Garcia. (*See* ECF Nos. 54 ¶ 26; 57 ¶ 26.)

most favorable to Plaintiff, the evidence shows that he cited at least some specific numbers in his conversation with Commissioner Garcia that he had failed to confirm or verify, and that were ultimately determined to be false.

Whether this failure constitutes reckless disregard for the numbers' truth or falsity, however, is a different question.  At the very least, Plaintiff provides no evidence to contradict Commissioner Garcia's testimony at the unemployment hearing that Commissioner Garcia left the meeting with the impression that the concerns Plaintiff had conveyed to him were based in fact, not hypotheticals.  (*See* ECF No. 54-6 at 66–67.)  Thus, even taking as true Plaintiff's assertion that he presented only approximate and hypothetical numbers to Commissioner Garcia, Plaintiff nevertheless failed to convey the unverified nature of this information.  Given Plaintiff's position as a Program Director for WCPS, it was reasonable for Commissioner Garcia to rely on Plaintiff's presentation of the facts at issue and believe them to be true.  *Cf. Pickering*, 391 U.S. at 572 (theorizing a situation where the harmful impact of a teacher's false statements about operational matters "would be difficult to counter because of the teacher's presumed greater access to the real facts").  Plaintiff therefore presented to Commissioner Garcia unverified information which, albeit intended as hypothetical, was presented without regard to the likelihood that Commissioner Garcia would take it as true.  This would appear to constitute recklessness.  However, even without concluding as much, Plaintiff's interest in this type of communication is undoubtedly lesser than the teacher's false statements in *Pickering*, where no allegation of reckless falsity was made.  *See id.*

Plaintiff ignores the effect of the falsity of his statements on the balancing test. Instead, Plaintiff attempts to bolster the value of his interest in communicating with Commissioner Garcia by citing his role as president of the Fire District and the fact that the information Plaintiff discussed was accessible in the public record.  (ECF No. 57 at 10–11.)  Plaintiff points out that Commissioner Garcia admitted during Plaintiff's unemployment hearing that he was the appropriate official at the time to approach regarding WCPS operations, and that it would be commonplace in his role as a Commissioner to meet with an elected official from a local fire district.  (ECF No. 57-3 at 68–69.)  This evidence highlights the ways in which Plaintiff's speech could be seen as contributing directly to the type of "free and unhindered debate on matters of public importance" that the First Amendment protects.  *Pickering*, 391 U.S. at 573.

As discussed above, *Pickering* does not establish whether recklessly false statements on matters of public concern are still protected by the First Amendment, and neither party has cited any subsequent authority elucidating this point.  *See id.* at 574 n.6.  Lacking any authority otherwise, the Court concludes that the arguably reckless falsity of Plaintiff's speech does not invalidate its First Amendment protection, and that because the government interest cited by Defendant is minimal, on summary judgment the balance of interests tips toward Plaintiff.  Accordingly, the Court concludes that Plaintiff has satisfied his burden on the third prong of the *Garcetti/Pickering* test.

       *c.*     *Motivating Factor*

The fourth prong of the *Garcetti/Pickering* test requires Plaintiff to present evidence that his speech was a substantial factor or a motivating factor in the

employer's decision to terminate him.  *Dixon*, 553 F.3d at 1302.  The parties agree that

the fourth and fifth prongs are ordinarily questions of fact to be decided by the jury.

(*See* ECF Nos. 54 at 20 n.6; 57 at 13.)  However, Defendant argues that this factor may

be decided as a matter of law in this case because Plaintiff has presented no evidence

to show that his protected speech was a motivating factor in his termination.  (ECF No.

54 at 20.)  Defendant urges the Court to rely on Defendant's own statement in his

declaration that it was Plaintiff's refusal to disclose or discuss his conversation with

Commissioner Garcia, rather than the meeting and communication of false information

itself, that was the basis for Plaintiff's termination.  (ECF No. 54-2 ¶ 18.)

Plaintiff points to the Pre-Dismissal Letter itself in support of his argument that

his speech was a motivating factor in his termination.  (ECF No. 57 at 14.)  The Pre-

Dismissal Letter lists five reasons for considering termination, including the following

under the title "Failure to meet performance standards":

> You scheduled and attended a meeting on August 26, 2011
> at [WCPS] Station #1 between yourself and County
> Commissioner Garcia.  It was reported to me by
> Commissioner Garcia on August 30, 2011 at briefing that
> you presented three concerns regarding the operations of
> [WCPS].  This meeting was not approved by your immediate
> supervisor, Operations Manager Mitch Wagy[,] nor did your
> meeting and conversation follow the chain of command.

(ECF No. 54-8 at 1.)  On its face, this refers to Plaintiff's failure to follow the chain of

command.  However, it also specifically refers to the meeting itself and the concerns

presented therein.  Therefore, a reasonable jury could rely on these statements to infer

that the meeting itself, not merely Plaintiff's failure to discuss it, was one of the bases

for Plaintiff's termination.  As such, a reasonable jury could find that Plaintiff's speech

was a motivating factor satisfying the fourth prong of the test.

The Court therefore finds that Plaintiff has presented evidence establishing a dispute of fact as to the fourth prong of the *Garcetti/Pickering* test, and therefore Plaintiff has satisfied this prong for the purposes of summary judgment.

> d.    Same Decision

The final prong of the *Garcetti/Pickering* test requires a showing that the defendant would have reached the same employment decision in the absence of the protected conduct. *Dixon*, 553 F.3d at 1302. Defendant again relies on his statement in his declaration that it if Plaintiff had not refused to discuss the matter, he would not have been terminated. (ECF No. 54 at 20–21.) Defendant cites other evidence of Plaintiff's insubordination, specifically his obstinance with respect to Defendant's questions about the meeting, arguing that Plaintiff could have resolved Defendant's concerns if he had been willing to answer these questions. (*Id.* at 22–23.)

In response, Plaintiff refers again to the Pre-Dismissal Letter indicating the meeting itself as a reason for termination and cites Defendant's testimony that he could not recall any other employees who he had terminated for misconduct. (ECF No. 57 at 15 (citing ECF No. 57-5 at 59–60).) Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could disbelieve Defendant's statements in his declaration and instead infer that Plaintiff would not have been terminated if he had not engaged in protected speech at the meeting with Commissioner Garcia. Accordingly, the Court finds that Plaintiff has satisfied the fifth and final prong of the *Garcetti/Pickering* test.

In sum, the Court finds that sufficient evidence exists to support each of the five elements of the *Garcetti/Pickering* test for a First Amendment violation.  Accordingly, summary judgment may not be granted on this basis.

2.   Clearly Established

Plaintiff's showing of sufficient evidence to make out a constitutional violation satisfies the first element of the qualified immunity analysis, but in order to defeat summary judgment, Plaintiff must also satisfy the "clearly established" element. *Herrera*, 589 F.3d at 1070.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).  While a plaintiff must meet this "heavy, two-part burden" in order to defeat qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001), he need not show that the precise issue in question was previously decided in his favor.  Rather, the Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotation marks and alteration omitted).  This holding "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)

(internal quotation marks omitted).  Thus, the question before the Court is whether the state of the law was such that Defendant should have been on fair notice that his conduct violated the First Amendment.

In his response to the Motion, Plaintiff has inexplicably ignored this prong of the qualified immunity test and has made no effort to meet his burden to show that the law was clearly established.  (*See* ECF No. 57.)  As the Court has already discussed, the parties have cited no authority on point as to the third prong of the *Garcetti/Pickering* test.  As such, the Court concludes that it was reasonable for Defendant to believe that the government's interest in protecting itself from false statements and disruption outweighed Plaintiff's First Amendment interest in being permitted to make unapproved false statements, because the law was not clearly established to the contrary.  Thus, even though the Court has found that Plaintiff has presented sufficient evidence to make out a claim for a violation of the First Amendment, he has failed to bear the heavy burden to show that the law was clearly established.

Accordingly, Defendant is entitled to qualified immunity to Plaintiff's First Amendment claim, and the Motion is granted as to that claim.

## B.      Wrongful Discharge Claim

With respect to Plaintiff's state law claim against Defendant for wrongful discharge in violation of public policy, Defendant first argues that the claim is barred by the CGIA, and second that Plaintiff fails to allege the requisite elements of the claim. (ECF No. 54 at 28–32.)  Because the Court finds the first argument dispositive, it will begin there.

The CGIA codifies governmental immunity from suit in tort cases brought against Colorado public entities and public employees.  Colo. Rev. Stat. §§ 24-10-101 *et seq.* Because Defendant was employed by WCPS, a public entity, when the events at issue occurred, Plaintiff's state law claim is subject to the CGIA.  (*See* ECF No. 22 ¶ 2.)

"A public employee is immune from liability on tort claims arising out of an act or omission of the employee during the performance of his or her duties and within the scope of his or her employment, unless the act or omission causing such injury was willful and wanton."  *Carothers v. Archuleta Cnty. Sheriff*, 159 P.2d 647, 650 (Colo. App. 2006) (citing Colo. Rev. Stat. § 24-10-118).  Colorado courts have adopted the definition of "willful and wanton conduct" from Colorado's exemplary damages statute, which defines it as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b); *see Drake v. City & Cnty. of Denver*, 953 F. Supp. 1150, 1160 (D. Colo. 1997); *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994).

Defendant contends that Plaintiff has presented no evidence of willful and wanton conduct.  (ECF No. 54 at 28–30.)  In response, Plaintiff points to the evidence that he is the only WCPS employee who was involuntarily terminated over the past decade, and argues that because the Pre-Dismissal Letter includes five bases for termination, it "could have been done for no other plausible explanation than to cause damage [to] Plaintiff's reputation and emotional well-being."  (ECF No. 57 at 17.) Plaintiff then re-argues the factual disputes regarding Defendant's purported reasons for the termination, but provides no other evidence supporting a reasonable inference

20

that Defendant acted purposefully in reckless disregard of Plaintiff's rights.  (*See id.* at 18–21.)  The Court finds that Plaintiff's cited evidence does not permit such a reasonable inference.  At most, this evidence supports a finding only that Defendant merely singled Plaintiff out for harsher discipline than other employees accused of misconduct would have received.

The Court concludes that, even taking the evidence in the light most favorable to Plaintiff, Defendant's actions do not constitute willful and wanton conduct under Colorado law.  Accordingly, Plaintiff's wrongful discharge claim against Defendant is barred by the CGIA, and the Motion is granted as to that claim.  As such, the Court need not consider Defendant's alternative argument that Plaintiff has failed to present evidence establishing the elements of his claim for wrongful discharge in violation of public policy.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant Dave Bressler's Motion for Summary Judgment (ECF No. 54) is GRANTED; and

2.     The Clerk of Court shall enter judgment against Plaintiff and in favor of Defendant, and Defendant shall have his costs.

Dated this 31st day of March, 2015.

BY THE COURT:

William J. Martinez
United States District Judge